J-S04019-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
CHRISTIAN VANCE JOY, :
:
Appellee : No. 860 MDA 2014

Appeal from the PCRA Order Entered May 16, 2014,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0005188-2009

BEFORE:  BOWES, ALLEN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 25, 2015**

Christian Vance Joy (Appellee) filed a petition pursuant to the Post

Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  The PCRA court

granted the petition, which resulted in a new trial for Appellee.  The

Commonwealth of Pennsylvania (the Commonwealth) appeals the PCRA

court's order.  In addition, Appellee has filed in this Court a document

entitled "Second Request for Application for Extension of Time to File

Supplemental Brief."  We affirm the PCRA court's order and deny Appellee's

application as moot.

The background underlying this matter can be summarized as follows.

On July 1, 2009, at roughly 2:40 p.m., [Officer Stephen
Cover] was dispatched to an apartment complex in response to a
reported domestic dispute wherein a male and female were
fighting.  When Officer [Cover] arrived at the address to which
he had been dispatched, he was not accompanied by other
officers.  He saw two maintenance workers and, across a street,

---

* Retired Senior Judge assigned to the Superior Court.

[Appellee]. One of the maintenance workers pointed to [Appellee] and told Officer [Cover], "There he is[;] there's the guy you need to speak to."

Officer [Cover] told [Appellee] words to the effect that the officer needed to talk to him. [Appellee] indicated that he was not going to talk to the police. Seeing that [Appellee] had one of his hands in one of his pockets, Officer [Cover] asked him to remove his hand therefrom. [Appellee] refused. Officer [Cover] then asked or told [Appellee] to "come here." Officer [Cover] also advised [Appellee] that, if no one had been injured and no charges were to be filed, [Appellee] would be free to leave.

Officer [Cover] then began walking toward [Appellee]. [Appellee] walked away from him. Officer [Cover] again indicated that he needed to speak to [Appellee] and told him to stop. At that point, [Appellee] ran. Officer [Cover] chased [Appellee] and saw that he continued to keep his hand in his pocket until [Appellee] and Officer [Cover] ran around the corner of a certain building. [Appellee] slowed his pace somewhat at that point, and Officer [Cover] eventually caught him.

Upon catching [Appellee], Officer [Cover] took him to the ground. [Appellee] then struggled with Officer [Cover]. At that time, [Appellee's] girlfriend arrived on the scene and began trying to go through [Appellee's] pockets. The female refused Officer [Cover's] commands to back away and, when [Officer David Shifflett] arrived, the female also refused Officer [Shifflett's] similar commands. Eventually, Officer [Shifflett] arrested the female.

Officer [Cover] arrested [Appellee] and, during a search incident to that arrest, Officer [Cover] found roughly $250.00 in [Appellee's] pockets. After placing [Appellee] in a police car, Officer [Cover] retraced the path of his foot pursuit and, while doing so, found a plastic bag. The bag, which did not appear to be weathered in any way, was on a bush, somewhat "nestled down" into the bush, but essentially on top of it. Officer [Cover] would later testify that, while chasing [Appellee], Officer [Cover] did not see anyone other than [Appellee] in the path or area of the chase.

In the bag were numerous clear vials. Liquid was in some of those vials; vegetable matter was in others. Laboratory tests

would later show that the liquid was PCP and that the vegetable matter contained PCP.

After retrieving the bag, Officer [Cover] walked past the police car in which [Appellee] sat. As the officer did so, [Appellee] tried to kick out the windows of the vehicle. Officer [Cover] later transported [Appellee] to a police station. While [Appellee] was in a holding cell, police administered him his rights under **Miranda v. Arizona**, 384 U.S. 436 (1966). He agreed to speak with police and asked with what he was being charged. When Officer [Cover] indicated [Appellee] was being charged with possession with intent to deliver ("PWID") marijuana based on Officer [Cover's] belief that the vegetable matter was marijuana, [Appellee] replied to the effect that he could not believe the police thought "that was weed." An expert witness for the Commonwealth would later testify that PCP is typically coated onto mint leaves to be smoked.

[Appellee] eventually faced charges of PWID PCP, possessing drug paraphernalia ("paraphernalia"), resisting arrest ("RA") and disorderly conduct ("DC"). Prior to trial, he moved to suppress the evidence found by Officer [Cover] on the aforesaid bush. The court denied that motion; [Appellee] proceeded to trial. He was convicted of RA and DC, but the jury could not reach a verdict on PWID and paraphernalia. The court declared a mistrial on those charges.

Thereafter, [Appellee] was retried on PWID and paraphernalia, and he was convicted of those offenses. [Appellee] was then sentenced on all four convictions. He filed a post-sentence motion for a new trial, essentially contending in that motion that the PWID verdict was against the weight of the evidence. The court denied [Appellee's] post-sentence motion….

**Commonwealth v. Joy**, 62 A.3d 464 (Pa. Super. 2012) (unpublished memorandum at 1-4) (citations omitted).

This Court affirmed Appellee's judgment of sentence. **Id.** On May 31, 2013, our Supreme Court denied Appellee's petition for allowance of appeal.

***Commonwealth v. Joy***, 68 A.3d 907 (Pa. 2013). Appellee timely filed a PCRA petition, and the PCRA court appointed counsel to represent Appellee.

PCRA counsel initially sought to withdraw his representation of Appellee pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). However, counsel later withdrew his request to withdraw and filed an amended PCRA petition.

In the amended petition, counsel stated that Appellee's wife provided counsel with bank statements. The bank statements indicate that, on the day he was arrested, Appellee had withdrawn approximately $250 from his bank account. According to the amended PCRA petition, during his trial, the Commonwealth utilized the $250 found on Appellee on the day of his arrest as evidence to connect Appellee to the drugs the police recovered in a bush. Appellee averred that trial counsel was ineffective for failing to present the jury with the bank statements, as those statements would have countered the Commonwealth's theory regarding the $250.

The PCRA court held a hearing on May 13, 2014. The PCRA court subsequently issued an order, which in effect granted Appellee's PCRA petition and ordered that Appellee receive a new trial. The Commonwealth timely filed a notice of appeal. The PCRA court directed the Commonwealth to comply with Pa.R.A.P. 1925(b), and the Commonwealth filed a 1925(b)

statement. The PCRA court eventually authored an opinion in response to that statement.[1]

In its supplemental brief to this Court, the Commonwealth asks us to consider the following question: "Whether the PCRA court erred in finding Appellee's trial counsel was ineffective for failing to introduce a bank statement that was irrelevant to [] Appellee's defense at trial when [] Appellee's defense at trial involved denying possession of the controlled substance that he was convicted of possessing?" Commonwealth's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's rulings are supported by the evidence of record and free of legal error. **Commonwealth v. Anderson**, 995 A.2d 1184, 1189 (Pa. Super. 2010). "To establish ineffectiveness of counsel, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." **Commonwealth v. Jones**, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citations omitted).

---

[1] Because the PCRA court did not file its opinion until January 9, 2015, this Court remanded the matter to allow the Commonwealth to file a supplemental brief addressing the rationale employed by the PCRA court in its opinion.

The PCRA court accurately summarized the evidence submitted at the PCRA hearing as follows:

At the PCRA Hearing, [PCRA] counsel called [trial counsel to testify]. [Trial counsel] is currently employed at the Dauphin County Public Defender's Office and represented [Appellee] for the second jury trial. [Trial counsel] testified that he had a chance to review the transcripts from the first jury trial and that he noticed the bank records were objected to. [Trial counsel] did have an opportunity to talk to [Appellee] prior to [his] second trial. [Appellee] did inform [trial counsel] about the bank statement. [Trial counsel] testified that "in retrospect … I realized maybe it would have helped a jury say, hey, he wasn't a drug dealer because he had a reason to have the $250 not from the sale of drugs." When asked if [trial counsel] could have changed what he had done and obtained the records, [trial counsel] stated that "yea he probably would." [Trial counsel] testified that the defense presented at trial was that it was not [Appellee]. [Trial counsel] testified that [Appellee] asked him for the records at some point and that [Appellee] told him to "show where this came from." [Trial counsel] responded that it's not important.

[PCRA counsel] proceeded to call [Appellee] to the stand. [Appellee] indicated that there were two trials in this case and the first trial was a hung jury. [Appellee] testified that he informed [previous counsel] at the first trial of the bank record and that [Appellee] actually gave [previous counsel] a copy of it. [Appellee] testified that he believed that the jury actually heard the objection and that it helped to cause a hung jury as to [the drug-related charges]. [Appellee] testified that he was upset that [trial counsel] did not have the bank records because [Appellee] had just gone through a jury trial in which he knew that he needed to make the bank statements authentic.

On cross-examination at the PCRA Hearing, the Commonwealth introduced the bank statement. [Appellee] testified that his [statement] looked a little different but the amounts were the same. The bank statements were shown that the [account] was overdrawn. They also showed that there was a deposit of $227.05 from the National Recovery Agency where [Appellee] was employed. [Appellee] testified that he had the cash on him because he has a wife and six kids and that he had

bills to pay. [Appellee] further stated that he withdrew the money [out of the MAC machine] five minutes [] before he was arrested. [Appellee] testified that he believed [trial counsel] had his bank statement and that he was going to turn it over to PCRA counsel. [Appellee] further testified that there was nothing found inside his pockets that was indicative of selling drugs.

On direct examination at the PCRA Hearing, the Commonwealth called [the district attorney who represented the Commonwealth at both trials] to testify. [He] testified that the money was not that important. [The district attorney] further testified that what was important to the Commonwealth's case was proving [Appellee's] possession of those items by looking at all the surrounding circumstances of the case. On cross-examination, [he] stated that he gave a hypothetical to [the Commonwealth's expert at trial] which included the $250. [The district attorney] was asked if "the last thing the jury heard from [the Commonwealth's expert] was $250 in his pockets broken down into twenty-dollar bills, that's directly related to drug dealing?" [His] response was "if that's what the last thing was he said in there. I mean, that would have been the last part during my direct, because then [the expert] was on cross-examination."

PCRA Court Opinion, 1/9/2015, at 3-5 (footnotes omitted).

The PCRA court offered the following analysis in support of its decision to grant Appellee a new trial:

[Trial counsel] represented [Appellee] at the second jury trial. [Trial counsel], at the PCRA hearing, testified that in retrospect he would have tried to get the bank statements in. [Trial counsel] had a copy of the December, 2011 Jury Trial transcripts and could have seen that the bank statements were attempted to be introduced and were objected to. Furthermore, [Appellee] attempted to tell [trial counsel] that the jury heard the objection in the first trial and that the reason he thought he had a hung jury on two counts was because the jury heard the objection. [Appellee] further testified that he was aware of why the bank statement was objected to. Due to the bank statement not being properly authenticated, it did not come in the first trial. Furthermore, [t]rial counsel] testified that when looking

back he would have, probably, obtained the records. [He] tries to make the argument that he did not use the bank statement "because at the time I was arguing simple possession versus – or I wasn't arguing simple possession versus possession with intent to deliver. I was just arguing it wasn't him." But because it was [not] a smaller amount of [drugs], [trial counsel] testified that he was not trying to say that [Appellee] possessed it for personal use. Although [trial counsel] makes these arguments, the amount of cash that was found in [Appellee's] pockets would have directly related to the amount of money that [Appellee] had withdrawn from an ATM merely minutes prior to being arrested. Furthermore, no other items were found in [Appellee's] pockets that could tie him to the drugs. By producing the bank statement, there would have been a direct reason as to why [Appellee] had the cash in his pocket.

Finally, the result would have been different absent such error. There were two jury trials. In the first jury trial, there as a hung jury as to [the drug-related charges]. Only in the second trial, was [Appellee] found guilty of these counts. [Appellee] testified that, in his opinion, the reason the first jury reached a hung decision on [the drug-related charges] was due to the fact that they heard the objection as to the bank statement which would have indicated where [Appellee] received the cash that was found on his person.

Because the underlying claim has arguable merit, there was no reasonable basis as to why [trial counsel] in the second trial did not attempt to introduce the bank statements and the fact that [trial counsel] testified that he should have attempted to introduce the bank statements, and that there is a reasonable probability that the result of the proceeding would have been different absent such error as indicated by the first trial resulting in a hung jury at to [the drug-related charges], [Appellee] satisfied the ineffective assistance [standard].

*Id.* at 6-7.

The Commonwealth summarizes its argument on appeal as follows:

The Commonwealth contends that the PCRA court's decision is not supported by the record as the record indicates that [trial counsel's] strategic basis implemented at trial was reasonable in light of the defense theory he pursued which was

that the 15 grams of PCP did not belong to [Appellee]. At the evidentiary hearing, [trial counsel] testified that the bank record only explained the source of the money that was recovered from [Appellee], which would have only been effective in a defense of simple possession of the PCP found on [Appellee's] person. As [trial counsel] testified that the quantity of the PCP at issue in this case made an argument of personal use impractical, the Commonwealth contends that [trial counsel] had a reasonable basis for not introducing the bank record as it bore no relevance to [Appellee's] defense theory. Further, [on direct appeal, this Court] did not even address the money in [Appellee's] pocket when it concluded the weight of the evidence supported Joy's conviction of PWID in this matter and the bank record further presented [Appellee's] suspicious accounting practices.

Commonwealth Brief at 17. We disagree with the Commonwealth.

At trial, the Commonwealth was required to prove that Appellee possessed with the intent to deliver the drugs that Officer Cover discovered in a bush and that he possessed the related drug paraphernalia. The Commonwealth was unable to obtain direct evidence which established that Appellee possessed these items. Consequently, the Commonwealth had to prove that Appellee possessed the items through the presentation of circumstantial evidence.

A key piece of circumstantial evidence that the Commonwealth introduced at trial to establish that Appellee possessed the drugs and paraphernalia was the $250 that Office Cover removed from Appellee's pocket. The Commonwealth highlighted that the $250 consisted of all twenty dollar bills, save for one ten dollar bill. N.T., 12/5/2011-12/7/2011, at 35. Later, the Commonwealth's expert witness, through the use of a hypothetical, essentially testified that the circumstances of this case led him

to conclude that Appellee is a drug dealer. *Id.* at 87-91. One of those circumstances was that Appellee had cash on his person, the majority of which was made up of twenty dollar bills.

In short, the money recovered from Appellee's person provided an important piece of circumstantial evidence relied upon by the Commonwealth in its attempt to prove that Appellee possessed the drugs and paraphernalia. It was not, as the Commonwealth would like us to believe, unimportant. We therefore conclude there is arguable merit to Appellee's claim that trial counsel was ineffective for failing to present bank records showing Appellee withdrew $250 from a bank on the day he was arrested for these offenses. Such evidence would have strongly challenged the Commonwealth's theory that the $250 was related to the sale of drugs and thus may have undermined the suggestion that Appellee possessed the drugs and paraphernalia.

In terms of counsel's basis for not presenting the bank statements as evidence, counsel testified at the PCRA hearing that his trial strategy was to present a defense of "it wasn't him." N.T., 5/13/2014, at 6. However, evidence of the source of money found in Appellee's pocket is entirely consistent with an "it-wasn't-him" defense. Evidence that Appellee did not have drug-sale-related money on his person undermines the Commonwealth's theory that the money suggests Appellee possessed the drugs and paraphernalia. For these reasons, we conclude that Appellee

- 10 -

proved trial counsel's stated strategy for not presenting the evidence of the source of the money is unreasonable.

Lastly, we also conclude Appellee proved the prejudice prong of the ineffective-assistance-of-counsel standard. Stated succinctly, there is a reasonable probability that, but for counsel's failure to introduce the bank records as evidence at trial, the outcome of Appellee's trial would have been different. For these reasons, we affirm the PCRA court's order.

Order affirmed. Second Request for Application for Extension of Time to File Supplemental Brief denied.

Judge Bowes joins the memorandum.

Judge Allen files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2015